IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 117-046 |
| | ) | |
| ANTRON WRIGHT | ) | |
| QUINCY WRIGHT | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

The indictment charges Defendants Antron Wright and Quincy Wright with one count of conspiracy to possess with intent to distribute controlled substances, one count of possession with intent to distribute marijuana, and one count of possession of firearms in furtherance of a drug trafficking offense. (Doc. no. 1.) The indictment further charges Antron Wright with one count of possession of firearms by a convicted felon. (Id.) Defendants move to suppress evidence obtained from Facebook and a mobile home at 2074 Old Milledgeville Road in Thomson, Georgia. (Doc. nos. 55, 56.) Upon consideration of the briefs and hearing testimony on December 14, 2017, the Court **REPORTS** and **RECOMMENDS** Defendants' Motions to Suppress be **DENIED**.

**I.    FACTS**

On November 18, 2016, an anonymous tipster dropped off a packet at the Thomson, Georgia office of Corporal Brian Adams, a game warden with twenty years of experience with the Georgia Department of Natural Resources ("DNR"). (Doc. no. 76, Transcript at pp. 7, 10-12.) Cpl. Adams was not at the office when the tipster delivered the packet and does

not know the tipster's identity.  (Id. at 35-36.)  The packet contained printouts of screenshots of four posts made to Facebook during 2016 on the page of "Tron Belton," containing pictures from four dead whitetail buck deer along with tag lines wherein Mr. Belton claims to have killed each deer.  (Id. at 11-12; doc. no. 64-1.)  The anonymous tipster included handwritten dates on the printed screenshots indicating the postings occurred on October 25, 2016, October 31, 2016, November 1, 2016, and November 6, 2016.  (Tr. 11-12.)  The tag lines suggest the posts are close in time to the events, and indeed two posts refer to killing a buck "dis morning" and "at 5:30 today."  (Id.)

The posts, pictures, and handwritten dates suggest Tron Belton shot and killed four bucks during the 2016 season even though the legal limit was two bucks.  (Id. at 14-15.)  Based on his experience as a hunter and game warden, Cpl. Adams concluded at least one of the bucks was shot with a firearm because of the damage to the carcass and location of the shot.  (Id. at 17-18.)  When Cpl. Adams logged onto Facebook and found Tron Belton's page, he found one of the four photos although he did not specify which photo during his testimony.  (Id. at 13, 15-16.)

Investigator Jared Land with the McDuffie County Sheriff's Office identified Tron Belton from the Facebook postings as Antron Wright, a convicted felon prohibited from possessing a firearm.  (Id. at 16-17.)  Cpl. Adams pulled Antron Wright's criminal history and confirmed he was a convicted felon.  (Id. at 19.)  Cpl. Adams also found Antron Wright in the Georgia DNR database and determined he possessed a valid hunting license for 2016 but had checked in three does and one buck in the Game Check system rather than the four bucks depicted in the Facebook postings.  (Id. at 18.)

Cpl. Adams contacted Happy Valley Processing, a deer processor close to Antron Wright's residence. (Id. at 19.) Georgia DNR regulations require deer processors such as Happy Valley to maintain records concerning every deer they process. (Id.) Cpl. Adams discovered in Happy Valley's records that Antron Wright checked in several deer during the 2016 season, including one under a DNR confirmation number not assigned to him. (Id.)

On November 30, 2016, Cpl. Adams appeared before McDuffie County Magistrate Judge Bryan Swan seeking a search warrant for the Facebook page of Tron Belton. (Doc. no. 64-2.) Cpl. Adams concluded in his supporting affidavit there was probable cause to believe Antron Wright a/k/a Tron Belton committed violations of the following three statutes: (1) O.C.G.A. § 27-3-15, taking over the season limit of antlered deer; (2) O.C.G.A. § 27-3-29, recording and reporting requirements for game animals and birds; and (3) O.C.G.A. § 16-11-131, possession of a firearm by convicted felon. (Id.) Cpl. Adams averred the following facts in support of this conclusion:

> On November 18, 2016 affiant received five screenshots[1] from Tron Belton's Facebook page showing five antlered bucks that he had killed this season. Affiant searched Belton's Facebook page and could only find one of the pictures sent to him. It is believed that Belton has deleted some the [sic] pictures and messages about the deer he killed. Tron Belton's real name is Antron Wright. This was confirmed by Investigator Land of the McDuffie County Sheriff's Office. A criminal history shows that Antron Wright is a convicted felon and cannot possess a firearm. In the pictures he posted on Facebook it appears that the deer have been shot with a firearm.
>
> This request is being made to determine if there are other photographs or videos documenting the poaching activities that Tron Belton may be involved in.

---

[1] While Cpl. Adams refers to five screenshots in his affidavit, the record shows and he testified at the evidentiary hearing there were only four screenshots. (Doc. no. 64-1; Tr. 13.)

> Affiant believes that obtaining the private messages and wall posts as well as other information from Belton's public Facebook page is imperative to the investigation to assist law enforcement in locating any evidence, GPS locations, timestamps, etc. that would confirm or deny Belton's poaching activities . . . .

(Id. at 2.)

Cpl. Adams also gave sworn, unrecorded testimony to Judge Swan in support of the warrant. (Tr. 21-22, 68.) At the suppression hearing, Cpl. Adams summarized his verbal testimony to Judge Swan as follows:

> I explained to him how we had received the pictures, how I had looked them up, could only see one of them. I explained to him how -- once we got the information of who he was, how we saw where he'd only used Game Check on one buck where we had pictures of four. I explained to him how, when we went to -- I went to the processor, we actually found a confirmation number that didn't even belong to him showing he was using somebody else's . . . . I told him – that's how we made it to, you know, being Antron Wright, that it was through Jared Land and Larry Adaway . . . who, of course, the judge is very familiar with . . . . I had also run his criminal history and that, you know, I had proved he was a convicted -- I showed him the criminal history.

(Id. at 33-34.)

Judge Swan issued the warrant on November 30, 2016, and Facebook produced 1400 pages of records from Tron Belton's Facebook page on December 12, 2016. (Id. at 22-24; doc. no. 64-2, p. 5; doc. no. 64-3; .) After reviewing the production, Cpl. Adams returned to Judge Swan on January 24, 2017, seeking a search warrant for the "[r]esidence, all out buildings, vehicles and property at 2074 Old Milledgeville Rd Thomson Ga 30824." The warrant sought to obtain "[d]eer racks, illegal wildlife and parts thereof to include processed and unprocessed deer meat, firearms, ammunition, electronic devices used in the posting of

4

pictures on social media of illegally taken wild life, and electronic devices used in the marketing and selling of deer meat." (Doc. no. 64-4; Tr. 24, 27-28.)

Although Antron Wright's driver's license listed his father's address as his residence, Cpl. Adams sought the search warrant for 2074 Old Milledgeville Road based on the personal knowledge of McDuffie County Investigators Land and Adaway that this was the actual residence of Antron Wright. (Tr. 28, 83-89.) In support of his search warrant request, Cpl. Adams averred the following by affidavit:

> An anonymous complainant delivered pictures printed from Facebook of Antron Wright with numerous bucks that Wright killed this year. When I search [sic] Wright on Facebook I could not see all of his pictures because we were not listed as "friends." On November 25, 2016 I ran a criminal history check and determined that Wright is a convicted felon and not allowed to hunt with a firearm. On November 30, 2016 I received a search warrant from McDuffie County Magistrate Court for Wrights [sic] Facebook account. After reviewing Wrights [sic] Facebook posts I was able to prove that he had already killed 5 bucks during the 2016-2017 season. The bucks killed were as listed:
> October 25 - 4 point buck
> October 29 - 8 point buck
> October 31 - Spike buck
> November 1 - 6 point buck
> November 6 - 8 point buck
>
> Wright also posted pictures of a target he used and state ," [sic] u know dat bitch rite when u can put it in da circle from 120 yards" [sic]. He also stated," [sic] bout to see wat dis savage talking bout dis am. #308 looking for whitetails." [sic] Wright never posted pictures of the firearms he used to hunt with but he references using a Savage 308 caliber rifle. He also made reference to always making head and neck shots.
>
> While reviewing Wright's Facebook pictures I found four different pictures of Wright hunting without orange during firearms deer season. The dates are as follows: November 2, November 17, November 20 and November 23.
>
> It was also discovered that Wright was using Facebook to advertise the sell [sic] and delivery of deer meat to numerous people in the Thomson area.

(Doc. no. 64-4, pp. 1-2.)  Cpl. Adams also included a no-knock request in his affidavit to "increase officer safety" based on Wright's expression of unfavorable sentiments toward law enforcement on Facebook and his installation of a six-foot security fence and surveillance cameras.  (Id. at 2.)

Judge Swan issued the warrant on January 24, 2017, and a team of officers led by Cpl. Adams executed it the next day.  (Id. at 4.)  That search yielded eight firearms, 867 rounds of ammunition, and eighteen kilograms of marijuana.  (Id. at 5-6; doc. no. 64-5, p. 2.)  Officers also found a Vivint security system and digital storage device known as a "space monkey."  (Doc. no. 64-4, pp. 5-6; doc. no. 64-5, p. 3.)  Cpl. Adams obtained another search warrant from Judge Swan and seized the space monkey device on January 27, 2017.  (Doc. no. 64-5.)

Defendants move to suppress all evidence seized as a result of the Facebook warrant issued on November 30, 2016, the residential search warrant issued on January 24, 2017, and the space monkey warrant issued on January 27, 2017.  For the reasons expressed below the Court finds no basis for suppression.

## II.  DISCUSSION

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  Thus, a search warrant must:  (1) be based on probable cause; (2) be supported by a sworn affidavit; (3) particularly describe the place to be

searched; and (4) particularly describe the items to be seized.  United States v. Carson, 520 F. App'x 874, 888 (11th Cir. 2013).  In deciding whether to sign a search warrant, the issuing judge must make a "'practical, common sense decision'" whether, given all the information in the supporting affidavit, "'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  United States v. Jiminez, 224 F.3d 1243, 1248 (11th Cir. 2000) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  "'[P]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts[.]'"  United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999) (quoting Gates, 462 U.S. at 232). The validity of the warrant is evaluated based on the totality of the circumstances.  Id.; see also United States v. Flowers, 531 F. App'x 975, 981 (11th Cir. 2013) ("Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location.").

In the Eleventh Circuit, a court reviewing the decision of a judicial officer concerning the existence of probable cause gives "great deference" to that determination.  United States v. Bradley, 644 F.3d 1213, 1263 (11th Cir. 2011) (citing Brundidge, 170 F.3d at 1352). Thus, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed."  Cauchon v. United States, 824 F.2d 908, 911-12 (11th Cir. 1987) (citing Gates, 462 U.S. at 238-39).

### A.    The Facebook Warrant Is Valid.

Defendants argue the Facebook warrant is invalid because (1) Cpl. Adams never established the anonymous tipster's veracity or base of knowledge; (2) the supporting affidavit contained only conclusory statements by Cpl. Adams based solely on the

anonymous tipster's information; and (3) the search warrant was overly broad in seeking all materials associated with the Facebook page.  The Court rejects all three arguments because (1) the tipster submitted self-evident screenshots from a Facebook page Cpl. Adams independently investigated; (2) Cpl. Adams provided a detailed description of his investigation to Judge Swan by affidavit and verbal testimony; and (3) even if the warrant was overly broad, the Leon good faith exception to the exclusionary rule applies.

### 1. The Facebook Warrant Is Supported by Probable Cause and Particularized.

The four Facebook posts provided by the anonymous tipster established probable cause "Tron Belton" killed four bucks during the 2016 deer season, which is two above the legal limit, and he likely used a firearm to kill at least one of the four deer.  (Doc. no. 64-1; Tr. 14-15, 17-18.)  Cpl. Adams confirmed the Facebook page's existence, and he found on that page one of the four posts provided by the tipster.  (Tr. 13, 15-16.)  Cpl. Adams learned from Investigator Land that Tron Belton is Antron Wright, a convicted felon who resided at 2074 Old Milledgeville Road.  (Id. at 16-17.)  By checking the records of Happy Valley and the DNR database, Cpl. Adams determined Antron Wright reported killing one buck instead of four in 2016 and fraudulently used another person's DNR confirmation number for one of the deer he submitted to Happy Valley.  (Id. at 19.)

Defendants point out that Cpl. Adams did not include all of these detailed facts in his affidavit supporting the search warrant application.  Instead, he explained that Tron Belton is Antron Wright, a convicted felon, and the Facebook posts portray him killing more bucks

than the legal limit while utilizing a firearm he is prohibited from carrying. (See doc. no. 64-2.) Although succinct, the affidavit sufficiently establishes probable cause.

Moreover, Cpl. Adams testified he provided a more detailed, sworn verbal account of his investigation when he met with Judge Swan to obtain the warrant. (Tr. 21-22, 33-34, 68.) "The Fourth Amendment does not require that the basis for probable cause be established in a written affidavit; it merely requires that the information provided the issuing magistrate be supported by 'Oath or affirmation.'" United States v. Donaldson, 558 F. App'x 962, 967 n.3 (11th Cir. 2014) (quoting United States v. Clyburn, 24 F.3d 613, 617 (4th Cir. 1994)). Consequently, "'a federal court . . . may consider an affiant's oral testimony, extrinsic to the written affidavit, which is sworn before the issuing magistrate, in determining whether the warrant was founded on probable cause.'" Id. (quoting United States v. Hill, 500 F.2d 315, 320 (5th Cir. 1974)).[2]

Defendants further argue Cpl. Adams failed to establish the anonymous tipster's identity, veracity, or basis of knowledge. (Doc. no. 55, p. 7; doc. no. 56, pp. 3-4; doc. no. 80, pp. 6-7; doc. no. 81, pp. 7-8.) Cpl. Adams never met the anonymous tipster. However, the Facebook screenshots provided by the tipster self-evidently established the basis of knowledge as being the Facebook page of Tron Belton. Cpl. Adams was able to independently corroborate this base of knowledge by finding the Facebook page himself and reviewing its contents. This was only the beginning of a thorough investigation described above that formed a strong foundation for a finding of probable cause and an independent

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed

basis for corroborating the Facebook screenshots provided by the anonymous tipster. See United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002) ("[W]hen there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant."); see also Navarette v. California, 134 S. Ct. 1683, 1688 (2014) ("[C]orroboration of certain details made the anonymous tip sufficiently reliable to create reasonable suspicion of criminal activity. ").

### 2. While There Is a Good Faith Argument the Facebook Warrant Was Overly Broad, The Leon Good Faith Exception Applies.

Antron Wright contends the search warrant was overly broad because it sought not just photos and videos but everything on the Facebook page. (Doc. no. 80, p. 8.) There is a good faith argument to this effect as the Eleventh Circuit recognized in United States v. Blake, 868 F.3d 960, 973-74 (11th Cir. 2017), a decision issued nearly seven months after Judge Swan signed the Facebook search warrant. The Court need not decide the matter because, as the Eleventh Circuit held in Blake, the good faith exception to the exclusionary rule applies under United States v. Leon, 468 U.S. 897 (1984).

The judicially created remedy known as the exclusionary rule acts as a deterrent to violating the Fourth Amendment by preventing the use of evidence seized as a result of an illegal search. Martin, 297 F.3d at 1312. However, under Leon, the good faith exception allows the introduction of evidence in the prosecution's case in chief that is "seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate." Leon, 468 U.S. at 913. The Leon Court explained that the good faith exception to the exclusionary

---

down prior to October 1, 1981.

rule was appropriate because "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates."  Id. at 916.  Thus, under Leon, the question becomes whether the officers executing the warrant reasonably relied on the issuing Magistrate Judge's determination of probable cause.  Id. at 913; see also United States v. Herring, 492 F.3d 1212, 1215 (11th Cir. 2007) ("[T]he exclusionary rule does not bar the use of evidence obtained by officers acting in good faith reliance on a warrant which is later found not to be supported by probable cause.").

Under Leon, there are four scenarios under which the good faith exception to the exclusionary rule would not apply.  The exception does not apply where the judge issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth.  Leon, 468 U.S. at 923.  Nor does the exception apply in cases where the issuing judge "wholly abandoned" his or her detached and neutral judicial role such that no reasonably well trained officer would rely on the warrant.  Id.  The warrant must not be based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," and the warrant must not be so "facially deficient" that the executing officers could not reasonably presume it was valid.  Id.

When rejecting the same challenge to Facebook search warrants in Blake, the Eleventh Circuit reasoned as follows:

> [W]e need not decide whether the Facebook warrants violated the Fourth Amendment because, even if they did, the district court did not err in allowing the government to use evidence gathered as a result of them.  The Facebook warrants fall into the "good-faith exception" to the exclusionary rule established by . . . Leon, 468 U.S. 897 . . . .  See United States v. Herring, 492

11

F.3d 1212, 1215 (11th Cir. 2007) ("[W]hether to apply the exclusionary rule is an issue separate from the question [of] whether the Fourth Amendment ... [was] violated by police conduct.") (quotation marks omitted), aff'd, 555 U.S. 135 (2009).

In Leon the Supreme Court held that "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant" should generally not be excluded. 468 U.S. at 922. The Court noted two circumstances that could justify exclusion in a case like this one: (1) if the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" or (2) if the warrant was "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers c[ould not have] reasonably presume[d] it to be valid." Id. at 923.

The Facebook warrants do not fall within either category of excludable warrants. As we have already explained, probable cause supported issuance of the warrants. And while the warrants may have violated the particularity requirement, whether they did is not an open and shut matter; it is a close enough question that the warrants were not "so facially deficient" that the FBI agents who executed them could not have reasonably believed them to be valid. As a result, we affirm the district court's decision not to suppress the evidence gathered as a result of . . . the Facebook warrants.

Blake, 868 F.3d at 974-75. For these same reasons, the Facebook warrant at issue here is subject to the good faith exception to the extent, if any, it may be overly broad. Id.

## B. The Residential Search Warrant is Valid.

Defendants argue the residential search warrant is invalid because (1) Cpl. Adams' supporting affidavit contained conclusory statements; (2) the search warrant relies on stale information from October and November 2016; and (3) there was no nexus established between Antron Wright and the house Cpl. Adams searched. As explained below, the Court rejects these arguments because (1) Cpl. Adams' supporting affidavit contains detailed information beyond mere conclusions; (2) the information was not stale; and (3) Cpl. Adams established a sufficient

connection between Antron Wright and the residence, and, even if he did not, the Leon good faith exception applies.

### 1. The Search Warrant Affidavit Established Probable Cause and Was Not Stale.

The supporting affidavit submitted by Cpl. Adams provides, in pertinent part, as follows:

> An anonymous complainant delivered pictures printed from Facebook of Antron Wright with numerous bucks that Wright killed this year.  When I search [sic] Wright on Facebook I could not see all of his pictures because we were not listed as "friends."  On November 25, 2016 I ran a criminal history check and determined that Wright is a convicted felon and not allowed to hunt with a firearm.  On November 30, 2016 I received a search warrant from McDuffie County Magistrate Court for Wrights [sic] Facebook account.  After reviewing Wrights [sic] Facebook posts I was able to prove that he had already killed 5 bucks during the 2016-2017 season.  The bucks killed were as listed:
> October 25 - 4 point buck
> October 29 - 8 point buck
> October 31 - Spike buck
> November 1 - 6 point buck
> November 6 - 8 point buck
>
> Wright also posted pictures of a target he used and state ," [sic] u know dat bitch rite when u can put it in da circle from 120 yards" [sic].  He also stated," [sic] bout to see wat dis savage talking bout dis am.  #308 looking for whitetails." [sic]  Wright never posted pictures of the firearms he used to hunt with but he references using a Savage 308 caliber rifle.  He also made reference to always making head and neck shots.
>
> While reviewing Wright's Facebook pictures I found four different pictures of Wright hunting without orange during firearms deer season.  The dates are as follows: November 2, November 17, November 20 and November 23.
>
> It was also discovered that Wright was using Facebook to advertise the sell [sic] and delivery of deer meat to numerous people in the Thomson area.

(Doc. no. 64-4, pp. 1-2.)

Contrary to Defendants' contentions, the affidavit specifies facts establishing probable cause to believe Antron Wright killed more deer than the legal limit, possessed and used a firearm despite being a felon, failed to wear orange while hunting, and sold deer meat. In making the conclusion of probable cause, Cpl. Adams relied in part on his twenty years of experience as a game warden, and such conclusions drawn from experience support probable cause.  See United States v. Robinson, 62 F.3d 1325, 1331 n.9 (11th Cir. 1995) (opinions and conclusions of experienced agents regarding facts are properly considered in determining probable cause); United States v. Magluta, 44 F.3d 1530, 1535 (11th Cir. 1995) (same); United States v. Espinosa-Orlando, 704 F.2d 507, 511 (11th Cir. 1983) (same).

Defendant Quincy Wright contends the warrant relies on stale information from October and November, 2016.  (Doc. no. 55, p. 8; doc. no. 81, p. 8.)  Warrant applications must be based on timely information, and warrant applications based on stale information lack probable cause because they fail to show similar or other improper conduct is continuing.  United States v. Harris, 20 F.3d 445, 450 (11th Cir. 1994), modified on other grounds by United States v. Toler, 144 F.3d 1423 (11th Cir. 1998).  However, the staleness determination must be made on a case-by-case basis, in which a court "may consider the maturity of the information, nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched."  Id.  (citations omitted).

Here, the information in the affidavit was not stale.  The Facebook posts established probable cause Antron Wright killed five bucks in late October and early November of the 2016 deer season, and the season was not over until January 8, 2017.  (Doc. no. 64-1; Tr. 7);

see United States v. Galloway, 579 F. App'x 871, 874 (11th Cir. 2014) (holding forty-day old information regarding identity-theft crime was not stale because crime continuing and ongoing).  Furthermore, it was reasonable to believe Antron Wright would still maintain and store evidence related to the crimes in his home only three months after killing the deer in question, including firearms, ammunition, photographs, and deer meat.

> **2.  The Affidavit Established a Nexus Between Antron Wright and the Location to be Searched, and the Leon Good Faith Exception Applies to Any Nexus Deficiency.**

Defendants contend the affidavit fails to establish a nexus between Antron Wright and the mobile home at 2074 Old Milledgeville Road, and in support they point out that Antron Wright's driver's license listed his residence as his father's address at 1776 Old Milledgeville Road.  (Doc. no. 56, pp. 4-5; doc. no. 80, pp. 10-11; Tr. 28, 85.)  The affidavit in support of the search warrant application "should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity."  United States v. Mitchell, 503 F. App'x 751, 754 (11th Cir. 2013) (citing Martin, 297 F.3d at 1314).  As to providing the nexus between the items being sought and the residence of a defendant, "the affidavit must supply the authorizing magistrate with a reasonable basis for concluding that Defendant might keep evidence of his crimes at his home, i.e., a 'safe yet accessible place.'"  United States v. Kapordelis, 569 F.3d 1291, 1310 (11th Cir. 2009) (quoting United States v. Feliz, 182 F.3d 82, 87-88 (1st Cir. 1999)).

Cpl. Adams established a sufficient nexus between Antron Wright and the searched residence in the following excerpt from the no-knock section of the affidavit:  "Wright has erected a 6 foot tall security fence around the front of his residence.  McDuffie County

Sheriff [sic] Office has information that he has also installed surveillance cameras around his property to alert him of our arrival." (Doc. no. 64-4, p. 2.)  These statements establish Cpl. Adams conferred with local law enforcement and determined Antron Wright not only lived at 2074 Old Milledgeville Road, but had expended great effort and expense to erect a tall fence and install surveillance equipment.  These facts established a sufficient nexus between Antron Wright and the residence.

Cpl. Adams' affidavit also established a reasonable basis for believing Antron Wright would keep evidence of the crimes at his residence, thereby connecting the residence with the criminal activity under investigation.  The affidavit states generally Cpl. Adams' reasonable belief that evidence and instrumentalities of the crimes charged were at Wright's residence.  (Id. at 1-2.)  Furthermore, there is a substantial basis for Cpl. Adams' belief within the facts he conveyed to Judge Swan.  Indeed, common sense dictates that hunters keep hunting devices and quarry in their homes.  As the court in Kapordelis explained:

> "The justification for allowing a search of a person's residence when that person is suspected of criminal activity is the common-sense realization that one tends to conceal fruits and instrumentalities of a crime in a place to which easy access may be had and in which privacy is nevertheless maintained.  In normal situations, few places are more convenient than one's residence for use in planning and hiding fruits of a crime."

Kapordelis, 569 F.3d at 1310 (quoting United States v. Green, 634 F.2d 222, 226 (5th Cir. 1981)); see also United States v. Anton, 546 F.3d 1355, 1358 (11th Cir. 2008) (holding evidence of defendant possessing contraband of type normally expected to be hidden in residence will support search).  Judge Swan thus had a substantial basis for concluding Antron Wright likely stored firearms and evidence of illegal deer hunting within his

residence, a "safe yet accessible place" for those items.  See, e.g. Kapordelis, 569 F.3d at 1310-11 ("Given due weight to inferences drawn from facts by the magistrate judge who issued the search warrant and the law enforcement officers investigating [defendant's] activities, we conclude that there was probable cause to support the issuance of a search warrant for [defendant's] home.")

Even if Cpl. Adams had failed to establish in his affidavit a sufficient nexus between Antron Wright and the residence, which is not the case, the warrant would still fall comfortably within the Leon good faith exception.  There is no basis for a finding Cpl. Adams provided false information to Judge Swan, or that Judge Swan "wholly abandoned" a detached and neutral role in issuing the warrant.

Furthermore, the affidavit and warrant were not so facially deficient that the executing officers could not reasonably presume them to be valid.  The affidavit did not avoid the nexus issue but instead stated Antron Wright resided at the address and had installed security fencing and surveillance equipment.  There was ample evidence supportive of Cpl. Adams' conclusion.  Indeed, Investigators Land and Adaway know the Wright family well and confirmed to Cpl. Adams that Antron Wright lived at the house to be searched and not with his father.  Investigator Adaway testified at length concerning his extensive knowledge of the family and their living arrangements during the suppression hearing.  (Tr. 81-101); see United States v. Henry, 682 F. App'x 818, 819 (11th Cir. 2017) (good faith exception applies where "there was some basis for [applying officer] to believe that [the defendant] resided at the searched apartment").

### C. The Space Monkey Warrant is Valid.

Defendant Quincy Wright contends the space monkey warrant is deficient for the same reasons as the house warrant. (See doc. no. 55, pp. 7-9; doc. no. 81, pp. 7-9.) The space monkey warrant is even stronger because Cpl. Adams included in his affidavit new, inculpatory information obtained during the recent house search including guns and drugs seized and evidence confirming Antron Wright's use of the home. (Doc. no. 64-5, p. 3.)

### III. CONCLUSION

The Court **REPORTS** and **RECOMMENDS** Defendants' Motions to Suppress be **DENIED**. (Doc. nos. 55, 56.)

SO REPORTED and RECOMMENDED this 7th day of February, 2018, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA